Clerk, please call the next case. 145-2399, Palatine Welding Co. v. Meade Good afternoon, members of the panel, counsel. My name is Kevin Reed. I represent the employer here, Palatine Welding Company. We're here today to talk essentially about maintenance. As the arbitrator at the beginning of trial stated that according to this exhibit, and the exhibit he meant was the stipulation sheet, the following matters are in dispute. TTD. Is that correct, he asked of the attorneys in the room, and counsel stated, that's it. The commission relied upon that limitation when they failed to order vocational rehabilitation. It was not an issue based upon the stipulation sheet. It seems now that the commission wants it both ways, and that the petitioners want it both ways, because despite failing to address vocational rehabilitation, the commission did award maintenance. Maintenance runs incidental to vocational rehabilitation. This issue was not in dispute at trial, yet counsel and commission seemed to want to make it an issue after the fact. Well, if maintenance comes after an MMI point, and as would be conceded by the arbitrator and the commission, that MMI point had to be at some point the day he went back to work, even on restricted duty, or the day he left that job after his termination. At some point there, even though there isn't a specific finding, we have an MMI point. So after that, we have a maintenance possibility. Now, if you're talking about counsel brought in after the fact, an expert to comment upon the job that the petitioner was doing, it was a restricted duty job. They had accommodated him, as they may have been required to under ADA. But they had accommodated him, and he brought in an expert after the fact to state that, well, look, that's not a job for which there is a stable labor market. Well, that's evidence which could go to three things. That could go to an evaluation of a potential term total. It could go as part of the evidence that might be used in discussing a wage differential. Neither of those issues were on the table at trial. The nature and extent was not an issue. The only other thing it could go to is whether this was appropriate as part of some type of a claimant-created or group-directed vocational rehabilitation plan. Because if we're saying that this isn't this gentleman's permanent job, and we're not addressing the permanency at this point, then that evidence is only relevant to see if this was an appropriate vocational rehabilitation program. Yet the commission won't look at the vocational rehabilitation issue because it wasn't on the stick sheet. But they will award maintenance standing alone in a vacuum, essentially, stating this petitioner has restrictions, precludes him from his prior full employment. We're not going to look at any evidence on vote. He's awarded maintenance. What if the evidence at trial had been information that the respondent had placed into evidence? Maybe it was evidence that there was a stable labor market. Who's Edward Stephan? Edward Stephan is a vocational rehabilitation counselor. And didn't he testify in favor of the claimant at this hearing? In what regard? Yeah, we did. He was hired by the claimant. Right. Right. Okay. Yeah, he was. Okay. And the commission chose not to consider the issue upon which he testified, that being a vocational rehabilitation. So the problem here is how are we looking at this case? Is this a case where the person is returned to some type of full employment and then loses the ability to continue with that employment? Well, he got terminated, did he not? He did get terminated. Correct. Would it be your position that determination then would automatically preclude him from getting maintenance? If we're saying that there's a possibility of him getting maintenance, then are we talking about a vocational rehabilitation situation, I presume. And then my understanding then, what we should be looking for is whether or not he put forth a good faith effort in cooperating with this vocational rehabilitation system. And maybe that should have been the inquiry that the commission should have looked for. Not under the interstate discussion that we've had, but maybe they should have been looking for whether or not he cooperated in good faith. Because if we're talking about ongoing maintenance, then this guy hasn't got his permanent job, apparently. So let's see if he's cooperating. And under the facts of this case, I don't believe that he was. Well, you said under the facts. Didn't you in essence argue and aren't you arguing that the commission erred as a matter of law when it modified the decision to give maintenance benefits? Isn't that your position? That is the position, yes. Okay. I mean, the law comes into a couple different places. First, we don't feel that maintenance should be considered. It wasn't placed on a stick sheet. The respondent was required, was relying upon a stick sheet that said TTD. That's it, TTD. We all know TTD is different than maintenance. Respondent relied on that, yet the commission chose to discuss the issue of maintenance, not discuss the issue of voc, when everybody knows that those two run incidental to each other. Okay. The fact it wasn't on the stick sheet, you're saying, do you have any case law to support your argument that as a matter of law could not be given because it was not on the stick sheet? I don't. But I do feel it's an abuse of the discretion of the commission to pick one and exclude the other. As a matter of law, if the commission is basing its decision based upon the termination, upon an inference that they're drawing from a statement which lacks any foundation, that statement is tantamount for them to draw an inference from that. That's pure speculation and conjecture. And therefore, as a matter of law, there's no evidence to support the conclusion that they came up with here that this was not a valid termination. The statement was from the petitioner's operations manager, and there's no foundation for it. There's no support that that might lead to the conclusion that the commission reached that perhaps they wanted to get rid of this person. Nothing at all. I mean, you'd have to probably take five, six, seven steps to get to that point. I mean, it raises a problem, I think, for respondents, particularly in light of the ADA, particularly in light, and I'm by no means an expert, but of what's coming down the pipe with regards to the ADA, of we're going to be found trying to place people back on restricted duty as much as possible. Yet what precludes someone from coming in and saying, you know, when something happens, when someone quits, when somebody gets fired, whatever it may be, what precludes them from getting an expert to say, well, that was never a stable market for that in the first place? Where does our liability end? The only safeguard we have is the system itself and is the evidence that we get to put forth. And in this case, the commission limited the evidence to TTD by their own admission. They would not look at Vogue. And therefore, I don't think an award of maintenance, which should be incident of the Vogue, is an appropriate award in this particular case. Counsel, please. My name is Mark DiPaolo. I tried this case. And if the word maintenance is not on that slip sheet, I think that's the old slip sheet. It just says TTD. Now it says TTD slash maintenance. Then that's a technical failing on my part. That's true. But the entire... Is it important? Pardon me? Is it important? No, sir. The entire hearing was conducted with regard to ongoing benefits. They claimed, as you know, that they were finished with him because he was fired for cause. Finished with the claimant because he was fired for cause. I never thought that was true. Regardless of the outcome of the interstate scaffolding case, I never believed that the man was fired for cause. They still don't know why they fired him. Because this, as the commission said, is an accommodation, an attempted accommodation, noble, a noble accommodation, which failed. And it failed because it was unworkable to begin with. We have a good and valuable employee. By their witness's testimony, a de facto supervisor reads drawings, advises other people on how to handle the job, who holds up this pin-up calendar, swimsuit calendar, lights off a chain of events, which leads to his termination because he won't sign a document that he asks to take to his attorney. The supervisor, a lady supervisor, runs into the nun's locker room and confronts him face-to-face. And he can't understand her. He tells her to see the deaf interpreter. And she terminates the good and valuable employee. She's acting out, in essence. And she's acting out because during this one-year accommodation, he had been back to work for one year, he couldn't work any overtime. He was producing less. He worked every day overtime prior to his accident. It's a bad accident, an operated, a ruptured bicep on his dominant arm. He does heavy work. Never does overtime, never performs any overtime after the accident. He's earning less. They have to not only pay him his wage for producing less work, which he is, but they also have to pay his coworkers. His coworkers have to write on their time cards every week the time they spent helping the claimant because that's time away from their job. It costs the employer money. He, on the other hand, is frustrated because his arm is killing him at the end of every day. He can't make the wages that he used to make. He's not getting the work out that he used to get out, and it's not the same quality. It boils over in this ridiculous incident, the incident being this meaningless swimsuit calendar, which leads to a one-day suspension, which the employer will not let him take to the deaf interpreter. She testifies that at the following Monday after the incident, he called the employer through the deaf interpreter. She heard the popping noises of the interpreter's mouth as he was letting his lips be read by the claimant. No, she didn't think he needed to take that document to his attorney or to anyone to interpret it to him. Assuming all of that is true. It's not good policy. It's just both parties so frustrated at this one year of an unworkable accommodation that they blow up. All right. Let's assume all of that is true. You heard the arguments of opposing counsel on maintenance. Can you crystallize and succinctly tell us what evidence is there in the record to support the award of maintenance? The entire testimony of Steffens, who is the only expert in the field that was called, and he testified that, number one, the accommodated job that the claimant was doing at the time of the termination does not exist in the real world. It's a made-up job which is tailored specifically towards his needs with the helpers, et cetera. Number two, that he needs assistance. Number three, that assistance would maximize his wage and his opportunity to be hired. In other words, he goes right down to national key guidelines in his analysis of the claimant's case. To support the award of maintenance. To support the award, yes. And that's what it is. It's a maintenance case. If the arbitrator said it's TTD in dispute, maybe I took it in context to mean that permanency is not in dispute. But it's maintenance. It's not TTD. He's not totally disabled. He is capable of employment. No one ever suggested otherwise. He is MMI medically. His employment condition is in shambles, obviously, but he's not getting any better or any worse. He can't return to the previous employment, but he certainly is not disabled. It's all supportive of the award. It makes perfect sense. And that's the reason that we called Stephan, and he laid out the national key guidelines. And the commissioner, the commission hit it right on the head. It's not a determination for cause. It's not a determination because they're a malicious employer or he's a poor employee. It was that they were weary of accommodating him. And they're weary because it's an unworkable situation from both points of view. It was never going to work. If the employer, if he had not been terminated, if this ridiculous swimsuit calendar issue had never occurred, what if the employer went out of business, closed up shop? Would they still not be liable for assisting him in a job search or paying him while he conducts his own job search when he was doing a position that is not a real position in the general workforce? And that's why we produced that testimony at trial. Thank you. The medal, please. Counsel referenced technical failing as being unimportant. It's very important. It was important to this court in the Greedy case where the issue of maintenance wasn't raised, and about a month of benefits was struck down because of that technical failing. So it is very important. Counsel discussed a number of facts with you and kind of given A to B, B to C, a storytelling-type situation. This is the type of fill-in that you need, you know, as counsel did in his story, in order to get to the conclusion that the commission came to about what the reason was for the termination. On the facts in the record, it's not there. There's no evidence of a boiling over because of the situation. This is the way counsel has told the story. That's not what the record indicates. Counsel indicates Ed Stephan is the only evidence that talks about labor market, et cetera. He is correct. That's it. The petitioner doesn't testify at all. The commission fails to address the issue of Voke, and they otherwise affirm and adopt the opinion of the arbitrator who found Ed Stephan to be incredible and whose testimony he found to be irrelevant. Therefore, the only evidence on it has found on the issue has found to be irrelevant and incredible by the arbitrator and thereafter affirmed by the commission. Well, do we view the arbitrator's decision or the commission's decision? The commission's decision who affirmed the arbitrator in all other respects, and that was one of them. Thank you.